## 11698.  HARRISON COMPANY *v.* CITY OF ATLANTA.

" The duties of municipal authorities in adopting a general plan of drain-
age, and in determining when, where and of what size and at what level
drains or sewers shall be built, are of a quasi-judicial nature, involv-
ing the exercise of deliberate judgment and wide discretion; and the
municipality is not liable for an error of judgment on the part of the
authorities in locating or planning such improvements."

DECIDED APRIL 14, 1921.

Action for damages; from city court of Atlanta — Judge Reid.
May 22, 1920.

The Harrison Company sued the City of Atlanta for damage
to a stock of goods, alleging in part that " during a hard rain in
the city, a flood of water accumulated in front of petitioner's place
of business, running down into plaintiff's basement, and injuring
and destroying its property as aforesaid," and " that the cause of
said water running down into its said basement was due to the
fact that the manhole or eye into said sewer from the street was
entirely too small to carry off the flood of water into the sewer; it
being too small permitted the water to run through and over the
sidewalk and into the basement of petitioner's place of business,
as the eye to the sewer was entirely too small to carry off into the
sewer, as contemplated and as necessary to prevent the flooding of
petitioner's basement."  There was also an allegation that " the
city neglected its duty in the construction of the eyes and inlets
to the sewer in question," and that this " negligent construction
of the said sewer-eye caused the water to accumulate in the public
street and sidewalk in front of petitioner's property and petition-
er's property to become flooded at every hard rain."  How or in
what manner the city was negligent in constructing the sewer or
the sewer-eye was not shown by any facts alleged in the petition.
A demurrer was filed, as follows: " 1. No cause of action is alleged.
2. It appears that said suit is based upon a claim that the described
sewer was small; and defendant says it is not liable for a failure in
the discretion used in deciding upon proper size of sewer, but these
matters are left to a named official, under the charter of the city,
and his error, if there was an error, can not be charged to this city."

The demurrer was sustained and the petition dismissed, and the plaintiff excepted.

*B. H. & Harvey Hill,* for plaintiff.

*J. L. Mayson, J. M. Wood,* for defendant.

BLOODWORTH, J. (After stating the foregoing facts.)

The petition in this case is based upon a notice given by the plaintiff to the City of Atlanta as required by § 910 of the Civil Code of 1910. This notice, after stating that at a certain time and during a very hard rain the plaintiff's " place of business was overflowed and the water ran in the basement of [the plaintiff's] building," and damaged the goods stored therein, alleged that " the overflow was caused by the fact that the sewer-eye was entirely too small to carry away the water, and the overflow ran into the basement." The notice stated also that on several occasions the attention of the city officials was called " to the *inadequate condition* of the sewer in question in the event of a hard rain." (Italics ours.) It is clear that the only negligence stated in this notice is " the fact that the sewer-eye was entirely too small." This is the foundation upon which the petition is constructed. The words "inadequate condition," in the connection in which they are used, can mean nothing more than that the sewer-eye was insufficient in size for the specific purpose for which it was built. This notice makes no reference to any " defective construction " of the sewer-eye, and the petition must be based upon the specific negligence alleged in the notice. When the notice states a ground of negligence the petition must be bottomed upon that particular ground of negligence, and this cannot be changed by allegations in the petition. For the notice to state one ground of negligence and the petition another would be to allow a person to bring a suit against a municipality without complying with § 910, supra, and would require the municipality to defend a suit it had been given no chance to settle. This would defeat the end sought to be attained by the passage of the act embraced in that section of the code. We are not unmindful that in *Langley* v. *Augusta,* 118 *Ga.* 600 (45 S. E. 490, 98 Am. St. Rep. 133), the Supreme Court said: " The act of December 20, 1899, requires that all persons having claims against municipal corporations, for injuries to person or property, present ' in writing such claims to the governing authority of said municipality for adjustment, stating the time, place, and extent of such injury, as near

as practicable, and the negligence which caused the same,' before bringing suit against the corporation. Acts 1899, p. 74. This act does not contemplate that the notice shall be drawn with all the technical niceties necessary in framing a declaration. The purpose of the law was simply to give to the municipality notice that the citizen or property owner has a grievance against it. It is necessary only that the city shall be put on notice of the general character of the complaint, and, in a general way, of the time, place, and extent of the injury. The act recognizes, by the use of the words ' as near as practicable,' that absolute exactness need not be had. A substantial compliance with the act is all that is required; and when the notice describes the time, place, and extent of the injury with reasonable certainty, it will be sufficient. See, in this connection, Laue v. Madison (Wis.), 57 N. W. 93; Barrett v. Hammond (Wis.), 58 N. W. 1053; City of Denver v. Barron (Colo.), 39 Pac. 989; McCabe v. Cambridge, 134 Mass. 484; Cloughessey v. Waterbury, 51 Conn. 405. The petition need not exactly follow the notice, and an immaterial variance between the two as to time, place, or extent of injury will not amount to a fatal variance." But the discussion in that case has no reference to negligence. The words in the act, " as near as practicable," follow and qualify the words " time, place, and extent of such injury," but they precede and do not qualify the words " the negligence which caused the same." If the legislature had intended that a substantial compliance, as to the negligence to be stated in the notice, should be sufficient, would not the clause in the statute, " as near as practicable," have preceded the words " negligence which caused the same"?

As we construe the petition, it does not broaden or change the allegations of negligence from that stated in the notice; and the only negligence alleged in the petition, as the cause of the damage to the plaintiff's property, is the same as that stated in the notice, to wit, the small size of the sewer-eye. Paragraph 6 of the petition is as follows: " Petitioner says that the cause of said water running down into its said basement was due to the fact that the manhole or eye into said sewer from the street was entirely too small to carry off the flood of water into the sewer; it being too small permitted the water to run through and over the sidewalk and into the basement of petitioner's place of business, as the eye to the

sewer was entirely too small to carry off into the sewer, as contemplated and as necessary to prevent the flooding of petitioner's basement." The petition was amended in part as follows: " Petitioner says that the direct effect of the construction of the sewer-eye and drain complained of is to collect a large body of water at every hard rain, and to precipitate the water thus collected across the sidewalk and through the grating leading down into the basement of petitioner's property; that this result is caused by the wholly insufficient sewer-eye or inlet into the sewer from the surface, by negligent construction of said sewer-eye and drainage, and this condition of the sewer-eye has frequently been called to the attention of the defendant, and demand made that the defective condition be remedied by the city, but without effect." If the sewer-eye was too small this was not the result of " negligent construction," but was an error in the plan, involving the exercise of judgment and discretion, for which the municipality would not be liable. Even in the petition as amended there is no act of negligence which is alleged to have caused the water to overflow into the basement of the building and damage the petitioner, other than that the " sewer-eye was entirely too small." According to the petition as amended, the small size of the sewer-eye was the sine qua non of the damage. The petition, construed in connection with the notice and as a whole and most strongly against the pleader, as it must be, shows that it is the small size of the sewer-eye, and not any " negligent construction " thereof, that caused the damage.

Let it be borne in mind that this petition is not one for negligently failing to keep a sewer in repair, nor for negligently allowing a sewer to become obstructed, but is one for constructing a sewer with too small an eye. But were it otherwise, the Supreme Court in *City Council of Augusta* v. *Cleveland,* 148 *Ga.* 734 (98 S. E. 345), held that " the duty of a city to maintain its sewerage draining system in a good working and sanitary condition is a governmental function." In the opinion in that case the Supreme Court said (p. 736) : "This conclusion is in accordance with what was said in the case of *Love* v. *Atlanta,* 95 *Ga.* 129 (22 S. E. 29, 51 Am. St. Rep. 64), and the other cases decided by this court. *Watson* v. *Atlanta,* 136 *Ga.* 370 (71 S. E. 664). See also 6 McQuillin Mun. Corp. § 2669." The principle announced in the *Love* case has been

referred to with approval in a number of cases, among them *Nisbet* v. *City of Atlanta,* 97 *Ga.* 650, 653 (25 S. E. 173) ; *Ison* v. *Mayor &c. of Griffin,* 98 *Ga.* 623, 626 (25 S. E. 611) ; *Wyatt* v. *City of Rome,* 105 *Ga.* 312 (31 S. E. 188, 42 L. R. A. 180, 70 Am. St. Rep. 41) ; *Gray* v. *Mayor &c. of Griffin,* 111 *Ga.* 363 (36 S. E. 792, 51 L. R. A. 131) ; *Mayor &c. of Dalton* v. *Wilson,* 118 *Ga.* 101 (44 S. E. 830, 98 Am. St. R. 101) ; *Mayor &c. of Savannah* v. *Jordan,* 142 *Ga.* 412 (83 S. E. 109, L. R. A. 1915 C, 741, Am. Cas. 1916 C, 240) ; *Rogers* v. *City of Atlanta,* 143 *Ga.* 153 (84 S. E. 555) ; *Mayor &c. of Savannah* v. *Jones,* 149 *Ga.* 141 (99 S. E. 294). Section 897 of the Civil Code of 1910 is as follows: "Municipal corporations are not liable for failure to perform, or for errors in performing, their legislative or judicial powers. For neglect to perform, or for improper or unskillful performance of their ministerial duties, they are liable." This section was construed in *Cornelisen* v. *City of Atlanta,* 146 *Ga.* 417 (91 S. E. 416), where the Supreme Court said: " The whole section should be construed together in connection with its cognate sections, and as intending to declare that municipal liability should attach only for neglect to perform, or for improper or unskillful performance of 'ministerial duties.' This construction would leave intact the common-law doctrine, frequently applied in this State before and since the adoption of the code, of non-liability for conduct of officers, agents, and servants of municipal corporations in respect to duties devolving upon them in virtue of the sovereign or governmental functions of the municipality. This doctrine has been applied in *Love* v. *City of Atlanta,* 95 *Ga.* 129 (22 S. E. 29, 51 Am. St. R. 64), a case based on negligence of the driver of a garbage cart in the employment of the board of health; *Watson* v. *City of Atlanta,* 136 *Ga.* 370 (71 S. E. 664), a case based on negligence of the driver of an ambulance for a city hospital; *Rogers* v. *City of Atlanta,* 143 *Ga.* 153 (84 S. E. 555), a case based on negligence of a fireman in cutting a hole in a floor while engaged in extinguishing a fire, and into which the plaintiff stepped; *Mayor &c. of Savannah* v. *Jordan,* 142 *Ga.* 409 (83 S. E. 109, L. R. A. 1915 C, 741, Ann. Cas. 1916 C, 240), a case based on negligence of an inspector of the sanitary department in furnishing the driver of a garbage cart of the city with a defective vehicle, the axle of which broke and injured the driver. In those instances the duty was purely of a public nature, intend-

ed for the benefit of the public at large, without any pretense of private gain to the municipality; and because it was such, no liability would attach, as a general rule."

Under its charter the City of Atlanta has full power and authority, through the proper officers, to lay and maintain sewers. In the case under consideration, in determining the location of the sewer and the size of the eye thereof, the municipal authorities were exercising their public or governmental functions, and these were discretionary acts, and " as long as an official public act can be upheld as being within the exercise of the discretionary power conferred by the charter the will of the legislative body is supreme, and the courts have no power to interfere." " Under the charter of the City of Atlanta, the discretion of its municipal authorities, within the sphere of their powers, is very broad, and this discretion is to be exercised according to the judgment of the corporate authorities as to the necessity or expediency of any given measure. It follows, therefore, that where these authorities are acting within the scope of their duties and exercising a discretionary power, the courts are not warranted in interfering, unless fraud or corruption is shown, or the power or discretion is being manifestly abused to the oppression of the citizen." *City of Atlanta* v. *Holliday,* 96 *Ga.* 546(1) (23 S. E. 509). In *City of Atlanta* v. *Trussell,* 21 *Ga. App.* 343 (94 S. E. 651), Chief Judge Wade said: " The decisions are practically uniform in holding that the duties of municipal authorities in adopting a general plan of drainage, and in determining when, where and of what size and at what level drains or sewers shall be built, are of a quasi-judicial nature, involving the exercise of deliberate judgment and wide discretion; and the municipality is not liable for an error of judgment on the part of the authorities in locating or planning such improvements. See 28 Cyc. 1313(2)." " An adjacent property owner is not entitled to an injunction upon the ground that the sewer which, in the discretion of the municipal authorities, is about to be inserted, may be too small for the volume of water which, at times, will necessarily pass through it, thus flooding his lot, causing sickness, and otherwise damaging him." *Mayor &c. of Americus* v. *Eldridge,* 64 *Ga.* 525(2) (37 Am. Rep. 89). In City of Little Rock *v.* Willis, 27 Ark. 577, the Supreme Court of Arkansas said: " For the construction of a sewer which has not the capacity to carry off the

ordinary or extraordinary rain falls, the city can not be made responsible, and the reason for this is, that a city can not be held to answer for an error of judgment, committed by a body, created by law, and clothed with discretion to determine the width and depth of drains and sewers; to hold a city responsible, under such circumstances, would be to vest the power of judging of the proper grade of streets and the width and depth of sewers in the judiciary, instead of the City Council, where the Legislature placed it." In Johnston v. District of Columbia, 188 U. S. 20 (6 Sup. Ct. 924, 30 L. ed. 75), Mr. Justice Gray thus stated the rule: "The duties of the municipal authorities, in adopting a general plan of drainage, and determining when and where sewers shall be built, of what size and at what level, are of a quasi judicial nature, involving the exercise of deliberate judgment and large discretion, and depending upon considerations affecting the public health and general convenience throughout an extensive territory; and the exercise of such judgment and discretion, in the selection and adoption of the general plan or system of drainage, is not subject to revision by a court or jury in a private action for not sufficiently draining a particular lot of land." See also *City Council of Augusta* v. *Little,* 115 *Ga.* 124 (41 S. E. 238) ; *Mayor &c. of Savannah* v. *Spears,* 66 *Ga.* 304; *Mayor &c. of Dalton* v. *Wilson,* 118 *Ga.* 100, and cases cited on page 101 (44 S. E. 830, 98 Am. St. Rep. 101). The basic principle running through the decisions cited above is that the adoption by the municipal authorities of a general plan of drainage and the determining of where and what size sewers will be built are discretionary acts, and defects therein are referable to mere errors of judgment, and for these the city is not liable. Construing the petition in connection with the notice given to the city, in which the only negligence alleged was that the " sewer-eye was entirely too small," and applying the above principles to the pleadings in this case, it is clear that the court did not err in sustaining the demurrer and dismissing the petition.

*Judgment affirmed. Broyles, C. J., concurs. Luke, J., dissents.*

BROYLES, C. J., concurring. I agree with Judge Bloodworth that the petition in this case sets forth no cause of action and was properly dismissed .on general demurrer. The Supreme Court in *Love* v. *City of Atlanta,* 95 *Ga.* 129 (22 S. E. 29, 51 Am. St. Rep. 64), definitely established it as the law of this State that the City

of Atlanta, under its charter, was not liable to a private citizen for injuries to his person or his property occasioned by the negligence of any of the servants of the city while the servants were engaged in the performance of work connected with the preservation of public health. That decision has been repeatedly followed by the Supreme Court and by this court. It is equally well settled by the decision of the Supreme Court in *City Council of Augusta* v. *Cleveland,* 148 *Ga.* 734 (98 S. E. 345), that the building or the maintaining by a city of a sewerage-drainage system is connected with the preservation of the public health, and that the courts will take judicial cognizance of that fact. It is true that in the latter case it was held, that, notwithstanding that the maintenance by a city of its sewerage-drainage system was connected with the pre-servation of the public health and was therefore a governmental function, the city would be liable for *personal* injuries to a private citizen caused by the negligence of its servants while engaged in such work, if their negligence caused dangerous obstructions or de-fects in its sidewalks or streets, and if the city negligently failed to remove the obstructions or repair the defects. In the instant case, however, the petition did not show any dangerous obstruction or defect in the sidewalks or streets of the city, and the case comes squarely within the general rule that a city is not liable for the negligence of its servants while engaged in work connected with the preservation of the public health.

LUKE, J., dissenting. The majority of the court are of the opin-ion that the petition as amended failed to set out a cause of action, and that the judgment of the trial court sustaining a general de-murrer and dismissing the suit should be affirmed. I can not con-cur with my colleagues in this judgment. I am of the opinion that the petition as finally amended was legally sufficient to withstand a general demurrer. While it is now generally recognized that a municipality is not liable for damage resultant from the exercise of a governmental function, it is otherwise if the damage is the result of a ministerial function. The Political Code (1910), § 897, succinctly states the rule as follows: " Municipal corporations are not liable for failure to perform, or for error in performing, their legislative or judicial powers. For neglect to perform, or for improper or unskillful performance of their ministerial duties, they are liable." The record in the instant case calls upon us to

determine under which class of acts this case falls. My associates hold that it clearly comes under the governmental rule. I think it is clear that it comes under the ministerial doctrine. The petition as amended specifically alleges that the damage sued for was occasioned by the *" negligent, imperfect construction* of said sewer-eye and drainage, and this condition of the sewer-eye *has been frequently called to the attention of the defendant and demand made that the defective condition be remedied by the city,* but without effect."* The distinction between a governmental act and a ministerial act is clearly stated in the following quotation from 5 Thompson on Negligence, § 5794: "That a municipal corporation is not liable for errors of judgment in matters where its governing body or other officers act in the exercise of a *legislative or judicial discretion,* has given rise to a distinction as to its liability, between the case of a defective *plan* and that of a defective *execution* of public work. If the plan of a public work is so defective that I am thereby damaged, I can recover nothing, because the making of the plan was in the nature of a legislative or a judicial act; but if the work is defectively or negligently *executed* by the officers or agents of the municipal corporation who are charged with its execution, and I am thereby injured, then, according to this judicial casuistry, I can recover damages." Section 5872 of this same work also states that municipal corporations *" are frequently held liable to pay damages to the owners of private property for injuries which proceed from the *negligent* or *unskillful* manner in which the *ministerial* work of making the sewer, drain, of the like has been *executed,* or for negligence in *failing to keep it in repair,* or allowing it to become *obstructed,* whereby *unnecessary* damage is done to such property; in other words, where they have failed to exercise ordinary or reasonable care." Our Supreme Court has often recognized this rule to be correct.

In *Langley* v. *Augusta,* 118 *Ga.* 590, 598 (45 S. E. 486, 489, 98 Am. St. Rep. 133), it was said: " The officers in charge of the affairs of a municipal corporation may select places for the construction of a system of sewerage and drainage, and adopt a plan for such construction, without rendering the city liable in damages for injuries resulting from such selection and from the *proper* [italics mine] construction of the system. These officers may also, if it is necessary, take or damage property of private citizens in construct-

ing the system of sewerage and drainage; but adequate compensation must be paid for property so taken or damaged. The same is true of the construction of any public improvement. *City of Atlanta* v. *Green,* 67 *Ga.* 386; *Moore* v. *Atlanta,* 70 *Ga.* 611; *Roughton* v. *Atlanta,* 113 *Ga.* 948 [39 S. E. 316]. If a municipal corporation *negligently constructs* a system of sewerage or drainage, or *negligently maintains one properly constructed,* so as to injure private citizens or their property, it will be liable in damages for the injury thus occasioned." It was said in *Massengale* v. *Atlanta,* 113 *Ga.* 966 (39 S. E. 578) : " Permitting a public city sewer *to be or remain in such a defective condition* as to become a nuisance, with resulting injury to realty, gives a cause of action against the municipality in favor of the owner of such realty, and on the trial thereof he may recover for all damages to his property which have occurred within four years of the filing of his petition." In the case of *Mayor &c. of Savannah* v. *Spears,* 66 *Ga.* 304, the city was held liable on account of damage to crops from the escape or overflow of water from a canal maintained by the city for drainage purposes. In the case of *Mayor &c. of Waycross* v. *Houk,* 113 *Ga.* 963 (39 S. E. 577), the city was held liable on a petition to enjoin the city from continuing the location of the mouth of the main sewer of the city near the plaintiff's premises, or from extending it, as was contemplated, so that the sewerage would be discharged directly on her land. Again, in *Kea* v. *City of Dublin,* 145 *Ga.* 511 (89 S. E. 484), which was a case where damage to property from a dumping-ground of the city was claimed, the city authorities on repeated requests had refused to abate the nuisance, and it was held that a cause of action existed. See also *Mayor &c. of Savannah* v. *Jones,* 149 *Ga.* 140 (99 S. E. 297), recognizing and reaffirming the principle that a city is liable " where the injury was done after the governmental function had ceased, or where the cause of the injury had been permitted to continue for an unreasonable or unnecessary time." Other cases in point are: *Mayor &c. of Brunswick* v. *Tucker,* 103 *Ga.* 233 (29 S. E. 701) ; *City of Atlanta* v. *Word,* 78 *Ga.* 276, 286, and *City of Atlanta* v. *Trussell,* 21 *Ga. App.* 340 (94 S. E. 649), collating numerous cases in this State and other States.

It is true, of course, that pleadings must be construed most strongly against the pleader, but this does not warrant a strained

or unreasonable construction, and, as I view the petition under review, it alleged facts sufficient to show a *negligent maintenance* of a defective sewer (it being alleged that the city was repeatedly given notice to remedy the defective sewer); and it was also distinctly asserted in the petition that the defendant city *negligently constructed* the sewer in question. These allegations, in my opinion, bring the case squarely within and under the rule announced in the decisions cited above, viz.: "If a municipal corporation *negligently constructs* a system of sewerage or drainage, or *negligently maintains* [italics mine] one properly constructed, so as to injure private citizens or their property, it will be liable in damages for the injury thus occasioned."

In reaching this conclusion I have not been unmindful of the recent ruling of the Supreme Court holding that "the duty of a city to maintain its sewerage-drainage system in a good working and sanitary condition is a governmental function" (*City of Augusta* v. *Cleveland,* supra), but since the decisions upon which I base my opinion are apparently direct rulings to the contrary, and were rendered prior to that decision, I am constrained to follow the older line of cases, which have never been criticised, modified, or overruled.

As to that part of the majority opinion which deals with the case as if there was a fatal variance between the notice and the petition, suffice it to say that the record before us presents no such question for adjudication, since the city waived its right to insist upon a variance, by not specially demurring to the petition on this ground. See *Langley* v. *Augusta,* 118 *Ga.* 590, 601(12) (45 S. E. 486, 490, 98 Am. St. Rep. 133), where it was said: "The city had a right to waive the notice altogether, as well as its right to insist upon a variance. Foster *v.* Bellaire (Mich.), 86 N. W. 383. And it would seem that a failure to demur to the petition on this ground when the notice was attached thereto as an exhibit would amount to a waiver."