## HUSBAND v. SALT LAKE CITY.

No. 5800. Decided June 16, 1937. (69 P. [2d] 491.)

Rehearing Denied September 10, 1937.

*Shirley P. Jones,* of Salt Lake City, for appellant.

*Fisher Harris,* City Atty., and *E. R. Christensen* and *Gerald Irvine,* Asst. City Attys., and *Hurd & Hurd,* all of Salt Lake City, for respondent.

HANSON, Justice.

Plaintiff brought this action against Salt Lake City to recover for personal injuries sustained by him while he was in Pioneer Park, a park owned and managed by the city. The defendant filed a general demurrer to plaintiff's complaint. The lower court sustained the demurrer and, upon plaintiff failing to further plead, dismissed the complaint. Plaintiff appeals from the judgment of dismissal and assigns as error the sustaining of said demurrer and the dismissal of plaintiff's complaint. Pertinent to the questions before us, the complaint alleges:

"IV. That defendant owns, operates, manages and controls a certain park in said city situated between Third and Fourth South and Second and Third West Streets, known as Pioneer Park and owns, operates, manages and controls in said park a public swimming pool, and that both said swimming pool and said park are for the use of the inhabitants of said city.

"V. That children of tender years and of all ages living in the neighborhood of said Pioneer Park and elsewhere in said city have for many years in large numbers frequented and used said park as a playground, and did so frequent and use said park in the month of July, 1933, and also for many years have swam in the swimming pool in said park and did so use said swimming pool in July, 1933, all at the invitation of the defendant to so frequent and use said park and swimming pool, and that defendant at all times herein mentioned provided and maintained said park and swimming pool for the use and benefit of such children, and that in so using the said swimming pool the children were accustomed to play around the edges of the swimming pool in their bathing suits, and also at other places, and on the pedestrian pathways in said park.

"VI. That there are now and at all times herein mentioned were pedestrian pathways in said park leading to and around and adjacent to said swimming pool, and that said pedestrian pathways were not and are not for the use or convenience of vehicles, and particularly of trucks and other motor vehicles, and that the children frequenting and using said park and swimming pool, particularly in the mornings, did and would play in great numbers, run, chase each other and dash heedlessly to and fro along, over and across said pedestrian pathways and around said swimming pool and in said park, so that said pathways would be and were crowded, and particularly on the 8th day of July, 1933, were crowded with children thus scampering, running and playing and jostling each other to and fro as aforesaid.

"VII. That the defendant knew of the custom and habit of said children in playing, frequenting, and using said park, pathways and swimming pool as aforesaid, and regardless of this knowledge the defendant on many occasions, and particularly on or about the 8th day of July, 1933, operated a huge sprinkling wagon or truck without guards or attendants to keep said children away from it, over and along said pedestrian pathways in said park and in the vicinity of said swimming pool, and that said truck had water sprays located in the rear thereof so that water could be and was sprayed from said truck to settle dust and for other purposes desired by the defendant, and that defendant knew that said truck, and particularly the sprays of water sprinkled therefrom, would and did attract the children in said park and around said swimming pool, and that said children did and would

run in and around said spray and in and around and in front of and along the side of said truck; that in operating said truck over and along said pedestrian pathways and in said park, and in spraying and sprinkling with said truck there was great and grave and imminent danger to the lives and safety of said children, and operating said truck in and among said children while the children were at play and pushing and jostling each other and running to and fro was a great menace to the lives and safety of said children; that said children played heedlessly and without appreciation of the danger to themselves in running in and around and in front of and along the side of said truck, and in pushing and jostling each other as said truck proceeded along said pathway, all of which was known or should have been known to defendant; that said pathways were not provided for the use of said truck, and that said truck on or about the 8th day of July, 1933, and on similar prior occasions when defendant had operated said truck or another similar truck in the same way and at the same place, was a constant source of danger to the lives and safety of the children in said park as aforesaid, and that the operating of said truck in the manner aforesaid and at said times and places, and by reason of the presence of said children, and by reason of the water spraying from said truck and attracting said children as aforesaid, at all times, and particularly on the 8th day of July, 1933, then and there constituted a dangerous menace to the safety and welfare of said children, and was a nuisance, and that such nuisance was created by the defendant.

"VIII. That notwithstanding the danger and menace to the lives and safety of said children as aforesaid, and or about the 8th day of July, 1933, the defendant operated and caused to be propelled said sprinkling truck in said park and along the pedestrian pathways in the vicinity of said swimming pool, with the sprays of water sprinkling therefrom in and among said children who were then and there playing as aforesaid in great numbers, and that at said time and place the plaintiff, who was then and there a minor aged ten, unable to exercise the care and discretion of an adult, was proceeding towards the swimming pool in said park, and that as the said truck was operated as aforesaid the children were running and pushing and jostling and crowding each other around said truck and in front of and along the side thereof, and in and through said water spray, making loud outcries and noises, and that the driver of said truck nevertheless proceeded heedlessly to drive in and among said children, and that said children in running and pushing and jostling each other as aforesaid forced the plaintiff into the wheel of said truck so that his right leg was caught between the left wheel and the spring of said truck; that the driver of said truck was not watching the children or this plaintiff, or watching the progress of said truck as it proceeded in and

among said children, and that when plaintiff's leg was caught as aforesaid the children yelled and cried out to the driver of said truck to stop, and that he proceeded without heeding said warning and paid no attention to said outcries.

"IX. That by reason of the creation and maintenance of said nuisance by the defendant as aforesaid, and that by reason of the defendant's negligence and carelessness as aforesaid plaintiff's right leg was severely injured, and that the calf thereof was practically torn away from the leg, and he was forced to have hospital care and treatment for many weeks; that he suffered great pain and has a permanent and unsightly scar on his right leg which will be there the remainder of his life; that in healing said wound formed severe scar tissue and plaintiff's leg is permanently disfigured, all to his injury and damage in the sum of Fifteen Hundred ($1500.00) Dollars.

"X. That in the month of March, 1934, plaintiff through his father, R. S. Husband, submitted a claim to the Board of Commissioners of defendant, a copy of which is attached hereto marked Exhibit 'A', and by this reference made a part hereof; that on July 25, 1934, the Board of Commissioners of defendant denied said claim."

The claim presented to the city was verified and reads as follows:

"R. S. Husband, being first duly sworn deposes and says:

"That he is the father of Dale Husband, a minor, age ten years, and that he makes this claim for and in his own behalf and in behalf of said minor; that on July 8, 1933 at approximately eleven o'clock A. M. at Pioneer Park in Salt Lake City, one of the sprinkling trucks No. 37 of Salt Lake City, a municipal corporation, operated by a Mr. Oakes, was proceeding through Pioneer Park; that the said truck was sprinkling the ground and that children playing in said park were permitted by the driver of said truck to run around and through the water sprays from the truck, and that neither the driver of said truck nor any other representative or employee of Salt Lake City prevented said children from running around the truck and the sprays therefrom while the said truck was in motion; that the said Dale Husband was pushed into the said truck by other children playing in the park, and that the driver paid no heed to the said Dale Husband or to the cries of the other children warning the driver of the truck of the danger to the said Dale Husband, and that the driver of said truck proceeded in his course with the truck after the said Dale Husband had been pushed into it, and as a result thereof the said Dale Husband was severely injured in his right leg, the calf of said leg be-

ing practically torn away and the muscles and ligaments permanently impaired;

"That as a result of this accident the said Dale Husband was in the hospital for about five weeks and has suffered severe pain, and his leg has been permanently injured.

"Wherefore, the said R. S. Husband, on his own behalf and on behalf of said Dale Husband, a minor, makes claim against Salt Lake City for damages caused him and the said Dale Husband as aforesaid in the sum of Fifteen Hundred ($1,500.00) Dollars.

"[Signed] R. S. Husband."

As the parties themselves are not in agreement in respect to the theory upon which recovery is sought under the allegations of the complaint, we deem it advisable to set them out in haec verba. Their differences involve such matters of substance that the issues here to be determined must depend in large measure upon whatever theory is justified by the pleadings. Consequently, we will first consider the complaint for the purpose of determining the nature of the case therein alleged.

From the complaint it appears that the city now maintains, and for a number of years has maintained, a public park known as Pioneer Park. To this park children and others have been and are being invited to enjoy its facilities for play and recreation. Among such facilities is a swimming pool. For many years children in large numbers have used the park as a playground, particularly in the vicinity of the swimming pool, where they would play in their bathing suits, running and pursuing one another over and along the footpaths that are in close proximity to the swimming pool. The city was fully aware of the use thus made of this part of the park by children and that such walks were crowded with children playing thereon. On July 8, 1933, these paths were crowded with children, running, playing, and jostling each other upon these paths in the vicinity of the pool. On that day, and at other times previously, the city operated a huge sprinkling truck on these same paths to settle the dust. The paths, however, were only for use by pedestrians and were not intended to be used by vehicles.

The sprinking truck was provided with an outlet at the rear from which the water would emerge and spray the paths. No guards or attendants were provided to keep the children away from the truck, but, on the contrary, the children had free access to play and frolic in the spray and around and alongside of the truck, although the city knew that the truck and spray attracted the children and that they would run in and around the spray and around and in front of and alongside the truck. In thus operating the truck along these paths, there was grave and imminent danger to the lives and safety of the children while they were thus playing, pushing, and jostling each other in the spray and around the truck, as children are wont to play oftentimes heedlessly and without fully appreciating the danger to themselves. It is then alleged that by reason of the presence of the children and the spraying of water from said truck and the attraction that this had to such children, the operation of the sprinkling truck in the manner thus described on the day in question constituted a dangerous menace to the safety and welfare of the children and was a nuisance. The complaint then alleges the injury of plaintiff by being forced into a part of the sprinkling truck by the running, jostling, and pushing of the large number of children present while the sprinkling truck was being operated. The fair inference from the allegations of the complaint is that no one was in attendance, except the driver of the truck. It is alleged that he drove heedlessly along the pathway without watching the children or the progress of the truck, although the children in great numbers were playing in the spray and alongside the truck, as heretofore described, and were making loud noises. It is also alleged that when the plaintiff's leg got caught in the truck, the children yelled to the driver to stop, but that he proceeded without heeding their warning or paying any attention to their outcries. Plaintiff then alleges that by reason of the creation and maintenance of said nuisance and by reason of defendant's negligence he was injured, describing his injuries.

The complaint, as thus viewed, sets up two different grounds for recovery—one based upon the creation and maintenance of a nuisance, the other based upon the negligent operation of the sprinkling truck. These two grounds, it is true, are commingled in one statement of the cause sued upon, but the complaint is not attacked specially because of such commingling, and if it states a cause of action on either ground, the demurrer should have been overruled.

It appears to us that the pathway described in the complaint over which the sprinkling truck was being operated at the time of the injury was simply a part of the park itself, provided by the city solely for the use and enjoyment of the persons who utilized the park, and cannot propperly be said to be a part of the general system of ■ streets and sidewalks of the city. While the location of the swimming pool in the park is not given, this particular pathway apparently was one leading to the swimming pool towards which plaintiff was proceeding at the time he was injured. Such being our view, it becomes unnecessary to discuss the question of a city's liability for injuries received on a street or sidewalk running through a public park, but which street or sidewalk is found not to be, under the existing circumstances, a part of the city's street system. On the question of such liability, plaintiff has cited the following cases: *Ackeret* v. *Minneapolis,* 129 Minn. 190, 151 N. W. 976, L. R. A. 1915D, 1111, Ann. Cas. 1916E, 897; *Nelson* v. *Duluth,* 172 Minn. 76, 214 N. W. 774; *Kleopfert* v. *Minneapolis,* 90 Minn. 158, 95 N. W. 908; *City of Cleveland* v. *Pine,* 123 Ohio St. 578, 176 N. E. 229, 74 A. L. R. 1224; *Mayor, etc., of Baltimore* v. *Eagers,* 167 Md. 128, 173 A. 56; *Edmonston* v. *Kansas City,* 227 Mo. App. 817, 57 S. W. (2d) 690; *Ankenbrand* v. *Philadelphia,* 52 Pa. Super. 581. See, also, note in 99 A. L. R. 698.

This court has held that a city or municipality is not liable for the negligence of its employees while engaged in the performance of a governmental function. *Sehy* v. *Salt Lake City,* 41 Utah 535, 126 P. 691, 42 L. R. A. (N. S.)

915; *Gillmor* v. *Salt Lake City*, 32 Utah 180, 89 P. 714, 12 L. R. A. (N. S.) 537, 13 Ann. Cas. 1016; *Rollow* v. *Ogden City*, 66 Utah 475, 243 P. 791. We have also held that in the establishment, maintenance, and care of its parks, a city acts in its governmental capacity and is not liable for the negligence of its employees or agents in connection therewith. *Alder* v. *Salt Lake City*, 64 Utah 568, 231 P. 1102. Upon the facts as exhibited by the record then before this court in that case, we wish to express our full affirmance of the opinion then rendered. The court held that the city was not liable for the negligence of its employees in erecting a grandstand to be used by the people to view a celebration conducted by Salt Lake City in one of its public parks. See, also, *Emmons* v. *Virginia*, 152 Minn. 295, 188 N. W. 561, 29 A. L. R. 863; *Warden* v. *City of Grafton*, 99 W. Va. 249, 128 S. E. 375, 42 A. L. R. 263; *Mayor, etc., of Baltimore* v. *State*, 168 Md. 619, 179 A. 169, 99 A. L. R. 686.

We think that the sprinkling of these paths, under the conditions and circumstances alleged, must be considered as part of the maintenance and care of the park, the same as cutting and sprinkling the lawns would be. Under this view, it is not necessary to decide whether the main purpose of sprinkling was to protect health or to maintain the paths in good physical condition, as in either event the city in this state would be acting in a governmental capacity and, under the cases cited, would not be liable for the negligence of its employees. Likewise, it is not necessary to decide whether in sprinkling its streets a city acts in a governmental or proprietary capacity, a question argued at some length by the parties. Those interested in that question are referred to *Harris* v. *District of Columbia*, 256 U. S. 650, 41 S. Ct. 610, 65 L. Ed. 1146, 14 A. L. R. 1473; *Scibilia* v. *City of Philadelphia*, 279 Pa. 549, 124 A. 273, 32 A. L. R. 988; *Foss* v. *City of Lansing*, 237 Mich. 633, 212 N. W. 952; 52 A. L. R. 187; *McLeod* v. *City of Duluth*, 174 Minn. 184, 218 N. W. 892, 60 A. L. R. 101. We must conclude that the complaint does not state a cause of action so far as it seeks to recover

on the theory of the negligence of the driver in operating the sprinkling truck, solely because the city was in so doing, engaged in the performance of a governmental function.

As heretofore indicated, plaintiff proceeds in his complaint also upon the theory that the use of the sprinkling truck upon the pathway, under the conditions and in the manner alleged, created a nuisance. We have already stated the main facts alleged in the complaint. We must now decide whether those facts are sufficient in law to make a case in nuisance. In this regard, it must be borne in mind that it is not necessary to plead the evidence. Statements of ultimate facts are sufficient to withstand a general demurrer. It cannot be determined before hand, simply from an examination of the complaint, whether there will be sufficient facts assembled to warrant a finding supporting the allegations of the complaint. It is not contended that the use of the truck was a nuisance per se, so as to make the question of whether it was or was not a nuisance one of law and not one of fact. Under the allegations of this complaint, whether a nuisance existed is a question of fact. Consequently, we cannot say as a matter of law that the existence of a nuisance is not alleged, if the allegations disclose facts which, if supported by the evidence, would warrant reasonable men in finding that a nuisance in fact existed.

The term "nuisance" has been said to be "incapable of definition so as to fit all cases, because the controlling facts are seldom alike, and each case stands on its own footing." *Melker* v. *City of New York*, 190 N. Y. 481, 83 N. E. 565, 567, 16 L. R. A. (N. S.) 621, 13 Ann. Cas. 544. This court in *Dahl* v. *Utah Oil Ref. Co.*, 71 Utah 1, 262 P. 269, held that in determining whether a business as conducted constituted a nuisance, the question was one of degree and must be determined by the facts and circumstances involved, being a question of fact. In 46 C. J. 654, it is said:

"The question as to what constitutes a nuisance depends upon the nature and result of the acts of which complaint is made, and not upon the means by which produced, or the particular description ap-

plied to them. Whether a nuisance exists is a question to be determined, not merely by an abstract consideration of the thing itself, but in reference to its circumstances. For instance, the reasonableness of the use, the locality, the extent of the injury, the nature and effect of the matters complained of are matters that may be considered. No particular fact is conclusive. All the attending circumstances must be taken into consideration."

It frequently happens that the same act or omission may constitute negligence and, at the same time, give rise to a nuisance, and the existence of a nuisance frequently may presuppose negligence, the two torts being coexisting and incapable of separation. *McNulty* v. *Ludwig & Co.*, 153 App. Div. 206, 138 N. Y. S. 84. Whether a given situation, therefore, gives rise to an action based solely upon negligence or solely upon the creation or existence of a nuisance may become a most difficult question to decide. But the mere difficulty involved cannot alter the necessity to make a decision whenever the facts and circumstances create that necessity. The law has long recognized the two types of torts and has established principles and remedies to govern each. It is the court's duty to apply such principles and remedies. The inability to precisely delineate, by a satisfactory formula, the division between negligence and nuisance must of necessity leave the courts and triers of the facts more or less free to say whether negligence or a nuisance is involved in any particular case. But as a guide, the following principles have been enunciated: To find a nuisance, the dangerous condition must have been consciously created; that is, during the performance of its acts, the defendant must have known, or it must have been obvious and practically certain to a reasonably prudent person, that what it was doing was creating or was helping to create a dangerous condition. The condition brought about by its acts must have been a conscious objective of the defendant, or its acts must have been so reckless and unwarranted as to conclusively imply such intention. The acts which give rise to the condition may be negligent acts, but if the condi-

tion itself, which these acts produced, was an objective of the defendant and was dangerous, or if the defendant, as a reasonably prudent person, obviously and certainly must have known that the condition which it was creating was or would be dangerous, then, even though it did not intend danger or the unfortunate results, it was under obligation to refrain from performing the acts creating such condition. It then becomes no longer a question of exercising care in the performance of such acts. It becomes an absolute duty not to perform the creative acts at all. The wrongfulness thus has shifted to the doing of the acts as distinguished from the mere failure to exercise care in their performance. A nuisance arises from the violation of an absolute duty not to do, and is thus distinguished from negligence which involves the requisite care in the doing. *Herman* v. *City of Buffalo*, 214 N. Y. 316, 108 N. E. 451.

The same fundamental concept is expressed in *Melker* v. *City of New York*, supra, as follows:

"If the natural tendency of the act complained of is to create danger and inflict injury upon person or property, it may properly be found a nuisance as matter of fact. * * * Locality, surroundings, methods, the degree of danger, and the custom of the country are the important factors."

Likewise, in *Capozzi* v. *City of Waterbury*, 115 Conn. 107, 160 A. 435, 437, the court approved an instruction given to the jury on this question which contained the following language:

"If the natural tendency of the act complained of is to create danger and inflict injury upon person or property, it may properly be found a nuisance as a matter of fact. And in the case before us, you are to determine, as a matter of fact, whether or not the defendant performed the work in connection with these stakes in such a manner as would unnecessarily expose the plaintiff to injury."

In *Swinson* v. *Cutter Realty Co.*, 200 N. C. 276, 156 S. E. 545, 546, the court said:

"Primarily a nuisance is a condition, not an act, although a thing or an act which is lawful may be a nuisance by reason of its negligent use or operation."

See, also, 46 C. J. 663; *Abilene & Southern Ry. Co.* v. *Herman* (Tex. Civ. App.) 47 S. W. (2d) 915.

In the December, 1932, Harvard Law Review, at page 305, is contained a note pointing out the means by which courts have sought to avoid the rule that a municipality is not liable for a tort committed while in the performance of a governmental function. It is suggested that since it is not possible to declare any clearcut differentiation between corporate and governmental functions, the court frequently have defined as proprietary functions which might as well have been declared governmental, and, in cases of first impression, have refused to follow holdings in other jurisdictions declaring some particular function to be governmental. Illustrative of this, cases are cited which show that courts recently have classified, contrary to the weight of authority, the maintenance of parks and playgrounds as a corporate function. The cases of *Hoffman* v. *City of Bristol*, infra, and *Capozzi* v. *City of Waterbury*, supra, are referred to as another type of encroachment upon the rule of municipal immunity from liability for torts committed in the performance of a governmental function. The inference to be gathered from this note is that courts are seeking to find ways to circumvent the rule of municipal immunity from liability and the harshness and loss which attend the application of that rule. However, it appears to us that in applying the doctrine that a municipality is liable, regardless of whether it is acting in a governmental or proprietary capacity, if its acts create a condition amounting to a nuisance, the courts are not resorting to circumvention nor creating encroachments to avoid the effect of any rule which is applicable to situations involving merely a question of negligence. The nuisance doctrine brings into play an entirely new field of the law of torts separate and distinct

from the field of negligence. The effect of its application is to say to a municipality that it cannot do what it was under absolute duty to refrain from doing and then seek to escape making compensation for the injury resulting from such breach of duty. A municipality should stand, and the courts hold that it does stand, as hereinafter shown, in the same position as an individual in regard to its liability for injuries resulting from a nuisance of its own creation. This to us is not circumvention of nor encroachment upon any rule applicable under the law of negligence.

Without attempting further to define "nuisance" by exact terms, but applying the principles above stated, we think the complaint alleges sufficient facts to admit proof that the natural and obvious tendency of the operation of the sprinkling truck on the path as alleged was to create danger and inflict injury and, furthermore, that its operation in such a place and under the circumstances alleged created a condition obviously and definitely inherently dangerous and thus was capable of constituting a nuisance as a matter of fact. *Capozzi* v. *City of Waterbury*, supra. In our opinion the allegations of the complaint not only raise the question of carelessness in the operation of the truck, but also raise the question as to whether the use of the truck, under the conditions and circumstances alleged, created a condition of danger or hazard; whether it should have been used at all; whether it did not possess the quality when so used of tending naturally to produce danger. Under our practice, the complaint must receive a liberal construction and a general demurrer admits not only the truth of every fact alleged, but of all legitimate inferences deducible therefrom. *Wright* v. *Intermountain Motor Car Co.*, 53 Utah 176, 177 P. 237. The pleaded and admitted facts show that the city permitted a dangerous condition to exist each time this sprinkling truck was operated in the manner alleged upon the pathways in the vicinity of the swimming pool when the children were there playing and swimming. It is specifically alleged that "in operating said truck over and along said pedestrian pathways and in

said park and in spraying and sprinkling with said truck there was great and grave and imminent danger to the lives and safety of said children and operating said truck in and among said children while the children were at play and pushing and jostling each other and running to and fro was a great menace to the lives and safety of said children."

It is further alleged that the truck and its spray attracted the children and they would scamper and play about the truck and in the spray. It is true, the complaint does not in express words say that the truck and its use were inherently dangerous, but the complaint must be considered as a whole and when so considered it sufficiently appears that there was danger inherent in operating such an instrumentality at the time and place, in the manner and under the conditions described. In the case of *Regester* v. *Lincoln Oil Refining Co.*, 95 Ind. App. 425, 183 N. E. 693, 695, it was held that words such as "dangerous," "hazardous," "perilous," and "unsafe," are conclusions of fact and "must be considered when such conclusions are necessary to the sufficiency of the pleading that are affected thereby."

We pass next to a consideration of the question of liability of a municipality for injuries sustained by the creation and maintenance of a nuisance while engaged in a governmental function. The case of *Hoffman* v. *City of Bristol*, 113 Conn. 386, 155 A. 499, 75 A. L. R. 1191, holds that a city is liable for such injuries. In the annotation to that case in 75 A. L. R. at page 1199, it is said:

"A majority of the courts which have passed upon the question have held that the immunity of municipal corporations from liability for acts done in the performance of governmental function does not extend to cases of personal injury or death resulting from a nuisance created or maintained by a municipality and that a municipality is liable for such injuries, although the nuisance was created or maintained in the course of the discharge of public duty or governmental functions."

Many cases are cited in support of this statement. Some of the cases heretofore cited by us also sustain this rule. The

case of *Jeakins* v. *City of El Dorado*, 143 Kan. 206, 53 P. (2d) 798, cites and relies upon the annotation above quoted. See, also, *District of Columbia* v. *Totten*, 55 App. D. C. 312, 5 F. (2d) 374, 40 A. L. R. 1461; *Ramirez* v. *City of Cheyenne*, 34 Wyo. 67, 241 P. 710, 42 A. L. R. 245. We see no good reason why the immunity of a municipality from liability for injuries inflicted in the exercise of its governmental functions should be extended to give immunity where the injuries arise out of conditions created or maintained by the municipality amounting to a nuisance.

Defendant contends that the complaint fails to state a cause of action because it shows on its face that no claim was filed with the city within the time fixed by statute and that the claim, as filed, was insufficient to meet the requirements of the statute.

Section 15-7-76, R. S. Utah 1933, provides "every claim * * * for damages or injury, alleged to have been caused by the defective, unsafe, dangerous or obstructed condition of any street, alley, crosswalk, sidewalk, culvert or bridge," or from negligence "in respect to any such street, alley, crosswalk, sidewalk, culvert or bridge, shall within thirty days after the happening of such injury or damage be presented to the board of commissioners or city council." It then prescribes what the claim shall contain. The latter portion of the section reads:

"Every claim, other than claims above mentioned, * * * must be presented, properly itemized or described and verified as to correctness by the claimant or his agent, to the governing body within one year after the last item of such account or claim accrued, and if such account or claim is not properly or sufficiently itemized or described or verified, the governing body may require the same to be made more specific as to itemization or description, or to be corrected as to the verification thereof."

Section 15-7-77, R. S. 1933, provides that a claim not presented within the time and in the manner prescribed in section 15-7-76 shall be barred, provided that if the govern-

ing body requires a claim be made more specific as to itemization or description or be properly verified, sufficient time shall be given to meet such requirement.

We have already stated that the pathway here involved did not constitute a part of the city's street or sidewalk system. The first part of section 15-7-76, supra, mentions claims arising out of the unsafe, dangerous, and obstructed condition of and negligence with respect to a sidewalk or crosswalk. In determining what was intended to be included in the terms "sidewalk" and "crosswalk," we must consider them in connection with the other terms used along with them, namely, "street," "alley," "culvert," and "bridge." It would appear that in this part of said section the Legislature was legislating as to claims involving a city's street system. This is borne out by the fact that this section does not use the term "way," whereas section 15-7-77 does use "way" in addition to "street," "alley," "sidewalk," "crosswalk," "culvert," and "bridge," indicating that a claim for injuries due to a defective, unsafe, or dangerous or obstructed way, or to negligence in respect to a way, was not intended to be covered by the use of the words used in section 15-7-76. It would serve no useful purpose to attempt to state here just what the terms "sidewalk" and "crosswalk," as used in section 15-7-76, include. We are satisfied that the park pathway here involved cannot be considered as a sidewalk or a crosswalk so as to bring into operation the limitation and requirements specified in the first part of that section.

The claim here involved must come under the latter portion of said section, above quoted, referring to claims other than those mentioned in the first part of said section. This being true, plaintiff had one year in which to present his claim. The complaint shows it was presented about eight months after the injury was sustained. The claim, therefore, was not barred.

Defendant argues that the claim, as presented, was insufficient to meet the requirements of the statute. The claim

was signed by plaintiff's father and claimed damages in behalf of both himself and plaintiff in the sum of $1,500. Defendant contends that since there was no separate statement as to the amount claimed by plaintiff and the amount claimed by his father, the claim did not state the amount claimed by plaintiff. A similar claim was involved in the case of *Ackeret* v. *City of Minneapolis*, 129 Minn. 190, 151 N. W. 976, 978, L. R. A. 1915D, 1111, Ann. Cas. 1916E, 897. The court there held that the purpose of the notice or claim was to give the "municipal officers information which will enable them to ascertain and investigate the facts while the evidence is available, and to determine whether a liability exists, and, if so, the nature and extent of such liability." The fact that the amount claimed by the father and the amount claimed by the injured child were not given separately would not render the claim fatally defective.

Defendant also contends that the claim is defective because it does not designate the place where the accident occurred, except as being in Pioneer Park. We think that a description of the place is sufficient if it will enable the municipal authorities to ascertain the place by the exercise of reasonable diligence. *Rossi* v. *City of Schenectady*, 133 Misc. 792, 233 N. Y. S. 512, 513. It was not necessary to state in the claim in precise legal terms that the injuries resulted from the creation or maintenance of a nuisance. The claim, heretofore quoted, sufficiently states the time, place, character, and cause of the damages claimed so as to meet the requirement that it be properly itemized and described. It must be remembered that this claim falls under the second division of section 15-7-76, which apparently does not require the same particularity as is required by the first part of that section. On the question of the sufficiency of the claim, the followings cases are also in point: *More* v. *City of San Bernardino*, 118 Cal. App. 732, 5 P. (2d) 661; *Dunn* v. *Boise City*, 45 Idaho 362, 262 P. 507; *Peacock* v. *City of Greensboro*, 196 N. C. 412, 146 S. E. 3.

Defendant cites and quotes from *Harrison Co.* v. *Atlanta,* 26 Ga. App. 727, 107 S. E. 83, in support of the proposition that the complaint must be based upon the same ground of negligence as that described in the claim. The difference between our statute and the Georgia statute is perhaps sufficient to make that case inapplicable here. However, in the case of *City of Atlanta* v. *Blackmon,* 50 Ga. App. 448, 178 S. E. 467, the same appellate court expressly repudiated the doctrine laid down in the case of *Harrison Co.* v. *Atlanta,* and reiterated the rule that the statute did not contemplate that the notice should be drawn with all the technical niceties and formalities of a petition. Its purpose was to give the city an opportunity to investigate the matter in order to determine whether it will pay without suit.

We do not see any conflict between the statement contained in the claim as to what happened and the allegations of the complaint elaborating thereon and claiming the city had created and maintained a nuisance.

It appears from the complaint that the claim was presented to the defendant city; that the city acted upon the claim as presented and denied the same. The basis for denying the claim does not appear. Apparently no request was made to make the claim more specific in any particular, which request the city could have made had it so desired. It would appear, from aught that is revealed by the complaint, that the city acted upon the claim as presented and waived any defects now urged by it. *Bowman* v. *Ogden City,* 33 Utah 196, 93 P. 561; *Burton* v. *Salt Lake City,* 69 Utah 186, 253 P. 443, 51 A. L. R. 364.

It is also urged that the injury was not proximately caused by anything the city did, as the complaint alleges plaintiff was forced into the truck by the pushing and jostling of the children playing around the truck and in the water spraying therefrom. The city had created the dangerous condition by operating its truck upon the path in the midst of these playing and frolicking children. The jostling and pushing of the children merely concurred with the dan-

gerous condition thus created to produce plaintiff's injury. The complaint charges that the city knew that the children would run and play, push and jostle each other around the truck and in the water spray. The children had been in the habit of doing this. It is a proper inference to assume that the city could or should have foreseen that under the conditions described in the complaint some one of these children might be forced into the truck and receive injury. Under such conditions, it cannot be said that an independent cause intervened so as to relieve the city of liability. *Khoury* v. *Saratoga County,* 243 App. Div. 195, 277 N. Y. S. 3; American Law Institute, Restatement of Law of Torts, Negligence, § 449.

I am of the opinion that the lower court erred in sustaining the city's demurrer and dismissing plaintiff's complaint. With this view Mr. Justice LARSON concurs.

But inasmuch as the other of my associates do not concur in what I have said in respect to the question of nuisance and have written separate opinions expressing their individual views to the effect that the judgment should be affirmed, such is the order, to which order I dissent. Costs to respondent.

FOLLAND, Chief Justice.

I concur in the order affirming the judgment. I am unable to agree that the operation of a sprinkling wagon along a park pathway is a nuisance in any legal sense. In the opinion of Mr. Justice HANSON, nuisance is defined and distinguished. It is there said of nuisances:

"It becomes an absolute duty not to perform the creative acts at all. The wrongfulness thus has shifted to the doing of the acts as distinguished from the mere failure to exercise care in their performance. A nuisance arises from the violation of an absolute duty not to do, and is thus distinguished from negligence which involves the requisite care in the doing."

There can be no absolute duty in the city to refrain from laying the dust in the parkways of a park by means of a

sprinkling wagon, either when the park is void of people or when children are playing and bathing in the swimming pool. There is, however, a higher degree of care required when children are present than when they are absent. The case presents a failure to exercise the degree of care required to make the operation safe under the particular circumstances. The operation itself was perfectly lawful. The failure alleged on the part of the city is one of negligence and not of nuisance. I concur with Mr. Justice HANSON in his holding that the establishment, care, and maintenance of parks is a governmental activity of the city and that the city cannot be sued for negligence of its employees in connection therewith. The rule of immunity from liability in tort where the function involved in governmental as distinguished from a corporate or private activity of the city is one that is firmly intrenched in our law. The doctrine rests on the theory that the sovereign cannot be sued without its consent. The municipality in the exercise of its governmental function is acting as the agent of the sovereign and therefore it cannot be required to respond in damages by a suit in court. I see no reason why the city may not make some provision of compensation for injury or damage occasioned by the negligence of its employees or agents who may be engaged in governmental activity even though the city might successfully defend a suit on the ground of its immunity because the activity is governmental. I cannot bring myself to believe the legal principles involved will allow any other result than the sustaining of the judgment of dismissal as entered by the district court.

WOLFE, Justice.

I concur in the order affirming the judgment. I dissent from the grounds of Mr. Justice HANSON'S decision and the results reached on those grounds. I do not think that this sprinkling wagon being operated along a park pathway in order to settle the dust is a nuisance in the legal sense.

It may be an inconvenience to some one wanting to use the pathway, but even if a nuisance in this sense, I see no connection between the nuisance in that sense and the injury. No one was injured because the sprinkling wagon compelled them to conduct themselves as they might not otherwise have done if it were not for the wagon. An obstruction in the street might cause a congestion of traffic and this, by cause and effect, result in some injury or might be the direct cause of injury by some one running into it. If it was a nuisance to the public, such might also be the basis for a damage caused by the nuisance to one of the public. But here, rather than being a nuisance to the children, it attracted them. After they were attracted, by active intermediation of one child pushing another, the injury happened.

The prevailing opinion by its own definition eliminates the driving of a sprinkling truck as a nuisance. The holding of the operation of this sprinkling truck as a nuisance depends on whether it involves a condition dangerous to persons who, in the ordinary pursuit of their business or rights, may come in contact with it or may thus cause injury to their property.

It must be, as says the opinion, dangerous. There was no dangerous condition in this slow moving truck except as it was created by the active alliance of children pushing each other into its moving parts. A pin cushion might in that sense be dangerous if one child pushed another down on it. Any moving auto would be dangerous and a nuisance in this respect and especially if it were a calliope attracting children. If there had been animals in the park and a hay wagon filled with hay had gone in once a day—the children romping about and pulling the hay, it would be as much a nuisance as this sprinkling wagon. But it would not be because of a condition created, but because of some one actively co-operating to place himself or another in reference to the wagon so that an injury occurred. Nuisance usually has the idea of something static, stationary, comparatively continuous, as it affects the enjoyment of prop-

erty. A single noisy party one night in the year next door would not constitute a nuisance. But a resort where people congregated in boisterous and rowdy fashion repeatedly so as to materially affect enjoyment of property might be. This idea has been carried over in cases where a condition is created which in relation to the ordinary expected activities of people is likely to cause injury. The creator or party responsible for this condition is negligent in creating a nuisance, but that does not mean that every one who is negligent has created a nuisance.

Here the injury occurred, not by reason of a condition, but by the child becoming entangled in the wheel of the truck. I do not think the cases cited in the opinion bring this sprinkling wagon under the definitions therein given as a nuisance. The "natural tendency of the acts complained of" was not "to create danger or inflict injury." The natural tendency of a sleepily driven sprinkling truck is not to create danger or inflict injury. It is quite the reverse. It is only when some one does something which places him in a situation where the otherwise innocent implement does him harm. In the same sense, many thousands of pieces of equipment would be nuisances, although none of them used in the fashion for which intended would have a natural tendency "to create danger or inflict injury."

But I am willing to hold the city liable on the theory of respondeat superior for the negligence of the driver of this sprinkling wagon. I think the decisions have gone to ridiculous lengths in giving municipalities immunity from the negligence of their employees on the ground that the work in which such employees were engaged was in pursuance of governmental purpose. In the case of *Lehi City* v. *Meiling*, 87 Utah 237, 48 P. (2d) 530, I had something to say about the continual growth in the extent and kind of municipal functions and the obscurity of the line between governmental and proprietary functions. I see no difference essentially in the conduct of a municipal park and a municipal bathhouse, golf club, play ground, or dance hall. As pointed out

in the writer's opinion in the Lehi City Case, these municipal activities represent an expansion of municipal functions. Even the fact that fees are charged in some and not in others may not work any destruction in the essential nature of the undertakings. They are all recreational as distinguished from protective. I have no objection to including civic recreational projects as governmental, but I do not think the city should be insulated against responsibility for negligence of an employee on civic recreational undertakings. Moreover, there is such a matter as treating a particular activity of a municipality as governmental for one purpose and corporate or proprietary for another purpose. *Brush* v. *Com'r of Internal Revenue* (Oct. 1936) 57 S. Ct. 495, 81 L. Ed. . . ., 108 A. L. R. 1428.

I am in favor of restricting municipal immunity for the negligence of its employees while engaged in the city's business to that committed in the pursuit of actual protection of persons and property or preserving the peace of the community or some other police duty which it exercises as an agency of the state. The doctrine originated on the theory that the city was an agency of the state in its function of preserving the peace and protecting persons and property, and since the state could not be sued for negligence of its employees in performing such functions, neither should the agency be required to respond when its servant so engaged was guilty of negligence. I have some question about the soundness of the original doctrine, but as then restricted, it did not produce the unfairness which now ensues because of the greater and greater expansion of municipal activities construed to be for governmental purposes. The cases of *Gillmor* v. *Salt Lake City*, 32 Utah 180, 89 P. 714, 12 L. R. A. (N. S.) 537, 13 Ann. Cas. 1016, *Sehy* v. *Salt Lake City*, 41 Utah 535, 126 P. 691, 42 L. R. A. (N. S.) 915, and *Rollow* v. *Ogden City*, 66 Utah 475, 243 P. 791, are all cases where the employees were pursuing a duty of policing the community, such a duty as primarily devolved on the state, and were thus doing it for the state. I think even this can

be stretched to a nonsensical extent. The case of *Alder* v. *Salt Lake City*, 64 Utah 568, 231 P. 1102, held that the maintenance of parks and playgrounds was a public and governmental function and that the city was not liable for the negligence of its agents and servants in connection therewith, citing cases for and against the proposition. I am as before said, not concerned whether such city function is called "a public and governmental act." If it is a governmental act, it is not such as deals with the policing or protection of the community and, therefore, not one done in behalf of the state as an agent of the latter to carry out its policing functions; but one done by the local community for a local civic purpose, to wit, the furnishing of public recreation. That, to my mind, was never meant to be included under the original doctrine which had in mind the policing and protective functions of the state.

For the reasons stated herein, I think the demurrer to the complaint was improperly sustained, but since I cannot obtain the concurrence of my associates in this view and cannot concur in the holding that it is a nuisance, the judgment must be affirmed.

MOFFAT, Justice (concurring).

I am unable to agree that the operation of the sprinkling wagon by the city under the circumstances shown in the instant case was a nuisance. I therefore concur with the view of my brethren who hold that the operation of the sprinkling wagon, or the use of it under the circumstances was not a nuisance. I am also in accord with the view that the city in the operation of the sprinkling wagon, under the circumstances, was engaged in a governmental function.