22818. BUTLER *v.* CITY OF ATLANTA.

DECIDED AUGUST 16, 1933.

*W. H. Terrell, J. E. Kelly,* for plaintiff.
*J. L. Mayson, C. S. Winn, J. C. Savage,* for defendant.

JENKINS, P. J. 1. "Without express legislative authority, a municipality can not grant to any person the right to erect or maintain a structure or obstruction in a public street." Civil Code (1910), § 894. Obstructions "for purely private gain" are not permissible. "Streets are primarily intended for the use of travelers," and "any permanent structure in a street which materially interferes with travel thereon is a public nuisance. Permanent structures which do not interfere with travel and which are erected for public purposes, such as telegraph and telephone poles and the like, are permissible." *City Council of Augusta* v. *Reynolds,* 122 *Ga.* 754, 756, 758 (50 S. E. 998, 69 L. R. A. 564, 106 Am. St. R. 147). "Where not prohibited by law, a city may legally erect and maintain an obstruction in one of its streets, provided the obstruction is not dangerous and does not constitute an unreasonable in-

terference with the lawful use of the street;" and in such case, "the maintenance of the (structure) does not constitute negligence, either as a matter of law or in fact." *South Georgia Power Co.* v. *Smith*, 42 *Ga. App.* 100 (155 S. E. 80). A railroad is expressly permitted by statute "to construct its road across, along, or upon, or to use any street," with "the written consent" of the municipal authorities (Civil Code, § 2585, par. 5), which is presumed in the absence of allegation or showing to the contrary. *Townsend* v. *Georgia Power Co.*, 44 *Ga. App.* 132, 137 (160 S. E. 712). But streets being "intended primarily for the purposes of travel and transportation," their use by a street-railway company under authority of the statute must be for similar purposes. It "must adjust itself to the rights of the public in the same way that the public must adjust itself to the rights of the company. The railroad company can not unreasonably obstruct the street, or interfere with travel." *Atlantic &c. Ry. Co.* v. *Montezuma*, 122 *Ga.* 1 (49 S. E. 738).

2. The City of Atlanta by its charter may "widen, straighten, or otherwise change" its streets and sidewalks. Ga. L. 1874, p. 131, §§ 60, 62. By statute and for the foregoing reasons, the municipality and street-railroad companies operating within its limits have the power, without being guilty of maintaining a nuisance or committing thereby an act of negligence per se, to authorize the construction and maintenance of, and to construct and maintain under such municipal authority, what are termed "safety islands" or "safety zones" in streets at the side of a street-car line, for the use and safety of the public from automobile and other traffic when entering and departing from street-cars. Such zones have been generally recognized by the courts of other jurisdictions as a safety device of well-known efficiency for the protection of pedestrians and the reductions of casualties, the purpose of which is not to obstruct the thoroughfares, but to render them safer for travel. City of Jacksonville *v.* Bell, 93 Fla. 936 (112 So. 885, 53 A. L. R. 163) ; City of Cleveland *v.* Gustafson, 124 Ohio St. 607 (180 N. E. 59, 79 A. L. R. 1325) ; Seibert *v.* Mo. Pac. Ry. Co., 188 Mo. 659 (87 S. W. 995, 70 L. R. A. 72) ; District of Columbia *v.* Manning (D. C. App.), 18 F. (2d) 806 (53 A. L. R. 167).

3. "If a municipal corporation has not been negligent in constructing or repairing the same, it is not liable for injuries result-

ing from defects in its streets when it has no notice thereof, unless such defect has existed for a sufficient length of time for notice to be inferred." Civil Code (1910), § 898; *Mayor &c. of Montezuma* v. *Wilson,* 82 *Ga.* 206 (2) (9 S. E. 17, 14 Am. St. R. 150). "The general rule of law is that a municipal corporation is bound to keep its streets and sidewalks in a safe condition for travel in the ordinary modes, by night as well as by day; and if it fail to do so, it is liable for damages for injuries sustained in consequence of such failure." *City of Atlanta* v. *Perdue,* 53 *Ga.* 607, 608; *Brown* v. *Milledgeville,* 20 *Ga. App.* 392 (93 S. E. 25). It is also the general rule in this State, that, "in the absence of any statutory requirement, a municipal corporation is not under any obligation to light its streets with lamps, and from the exercise of its discretion in regard to whether it will do so or not no liability will arise. But if a municipality obstructs a street or allows it to remain obstructed, or out of repair, or in a dangerous condition, the fact of the absence of lights or safeguards of any character at the place, or that a street light established at that point has been allowed to remain unlit for a number of nights before an injury occurs to a passer, may be considered, along with the other evidence, in determining whether there is negligence in failing to keep the street in a reasonably safe condition." "If the city perform its duty with reference to keeping its streets in reasonably safe condition, the mere absence of an ordinary street light at a given point will not constitute such negligence as to render the city liable. But if the question is whether a city has performed its duty in regard to keeping a street in a reasonably safe condition, or whether it has been negligent in that regard, and in respect to failing to erect proper safeguards or to placing proper lights at a dangerous place where an injury occurs, the character of the light at that point, or its absence, may be shown as a circumstance bearing on the question of negligence." *Williams* v. *Washington,* 142 *Ga.* 281 (82 S. E. 656, L. R. A. 1915A, 325, Ann. Cas. 1916B, 196).

4. The plaintiff sued the city of Atlanta and the Georgia Power Company for injuries sustained by driving his automobile, between 11 and 12 p. m., into and against one of two "safety zones," made of concrete and about one foot high, with "an iron or steel post or column with red lights thereon," placed on the end of such "zone," which adjoined the railway of the company on Peachtree

street between Cain and Ellis streets in Atlanta. He alleged that the injury occurred because the lights on the north end of the "safety zone," on the post or column, were not burning, and he was therefore unable to see the pillars and zone on account of "fog and darkness;" and that the defendants were negligent and are liable, "in permitting the erection of and erecting said so-called 'safety zone' and pillars or posts or columns, maintaining the same, in failing to remove same, in not keeping the same lighted, and in failing to light same;" that the "safety zone" and posts constitute an illegal obstruction; and "that it was the duty of above defendants to keep red lights on said obstruction all night every night, so long as same remained in said street." With regard to the erection and maintenance of the "safety zone," and the posts and lights thereon, the averments were that these zones were erected by the power company "with the consent of said city;" that "the aforesaid obstruction has been in said street more than two years, and the city either had express notice of the same, or the same has been in said street for such a length of time that the city was on notice that the same was there, and had done nothing to abate same;" and that "said posts were erected and lights placed thereon by the power company, which lights are supposed to be kept burning all hours of the night by said company." Under the rulings stated above, the petition failing to show any negligence by the city in the construction or repair of the "safety zone," but on the other hand showing that the zone and posts were erected and the lights were placed thereon by the power company, and that such *"lights are supposed to be kept burning all hours of the night by said company,"* without any averment that the city had express or implied notice, by the lights being unlit during a sufficient length of time "for notice to be inferred," that on the particular foggy night of the injury such lights would not be kept burning by the power company, as the petition expressly alleges they were "supposed to be kept," no cause of action was stated as against the municipality. There was therefore no error in dismissing the suit as to the city on demurrer.

*Judgment affirmed. Stephens and Sutton, JJ., concur.*