30908. BEALL *v.* CITY OF ATLANTA *et al.*

DECIDED JULY 16, 1945. REHEARING DENIED JULY 27, 1945.

*G. Seals Aiken, B. F. Sweet,* for plaintiff.

*MacDougald, Troutman & Arkwright, J. C. Savage, J. C. Murphy, Bond Almand, J. M. B. Bloodworth, Ralph Williams,* and *Hugh Head Jr.,* for defendants.

GARDNER, J. ■ As we view the case as presented by the pleadings, we may treat it under two general heads: First, was the city exercising a governmental function in the planning and construction of the safety zone? And second, was it actionable negligence for the city to maintain the safety zone after it was thus planned and constructed? It has been definitely decided that the City of Atlanta under its charter powers has the authority to plan and construct safety zones within its streets for the convenience and

safety of the general public in boarding and alighting from street-cars. Dealing with the question, this court in *Butler* v. *Atlanta,* 47 *Ga. App.* 341 (170 S. E. 539), said: "The City of Atlanta by its charter may 'widen, straighten, or otherwise change' its streets and sidewalks. Ga. L. 1874, p. 131, §§ 60, 62. By statute and for the foregoing reasons, the municipality and street-railroad companies operating within its limits have the power, without being guilty of maintaining a nuisance or committing thereby an act of negligence per se, to authorize the construction and maintenance of, and to construct and maintain under such municipal authority, what are termed 'safety islands' or 'safety zones' in streets at the side of a streetcar line, for the use and safety of the public from automobile and other traffic when entering and departing from streetcars. Such zones have been generally recognized by the courts of other jurisdictions as a safety device of well-known efficiency for the protection of pedestrians and the reductions of casualties, the purpose of which is not to obstruct the thoroughfares, but to render them safer for travel. City of Jacksonville *v.* Bell, 93 Fla. 936 (112 So. 885, 53 A. L. R. 163.); City of Cleveland *v.* Gustafson, 124 Ohio St. 607 (180 N. E. 59, 79 A. L. R. 1325); Seibert *v.* Mo. Pac. Ry. Co., 188 Mo. 659 (87 S. W. 995, 70 L.'R. A. 72); District of Columbia *v.* Manning (App. D. C.), 18 Fed. 2d, 806 (53 A. L. R. 167)."

In District of Columbia *v.* Manning, cited in the *Butler* case, supra, the court said: "It is clearly within the power of the commissioners to establish safety zones for the protection of the public in entering and alighting from streetcars, as well as in waiting for the approach of cars. The establishment of safety zones, similar to the one in question, extends throughout the city, and is generally known by the public, and their use is recognized. It was not negligence as a matter of law to place these markers in the street in accordance with a uniform plan throughout the city. Before a device placed in the street for the protection of the public generally, and as an aid to the regulation of traffic, can be said to constitute negligence per se, it is proper to consider the scope of the authority reposed in the commissioners in matters of this sort. Modern traffic conditions in large cities are at best highly dangerous and difficult of regulation. Wide latitude, therefore, will be afforded the authorities in devising and establishing safety devices.

Platforms in the street for the protection of the traveling public in entering and alighting from streetcars may constitute more or less an element of danger to vehicles and pedestrians using the street. The same may be true of the method of establishing safety zones, but it can not be said that the exercise of such authority by the district commissioners is negligence as a matter of law. Where the advantages greatly outweigh the disadvantages, the exercise of the authority will be upheld."

The Supreme Court in *City Council of Augusta* v. *Little,* 115 *Ga.* 124 (41 S. E. 238) said: "It is now settled in this State that, where the legislature delegates governmental authority to a municipal corporation, the municipality is not liable to private individuals for any error in performing legislative or judicial powers. The adoption by a municipal corporation of a plan for grading the streets and sidewalks of a city is a quasi-judicial act, and, if the plan adopted be erroneous, the city can not be held liable to a private person who is injured thereby."

Dealing with the same principle this court said in *Smith* v. *Atlanta,* 21 *Ga. App.* 172 (93 S. E. 1022) : "The plaintiff's petition alleges substantially that he was walking along the sidewalk on Marietta Street in Atlanta; that when he reached a certain place on the sidewalk where the sidewalk is crossed by a private driveway, which driveway was built of cement and sloped from the building to the street, his foot slipped from under him and he fell, sustaining injuries; and that the defendant city was negligent: (a) 'In allowing said driveway to be constructed as above described in the sidewalk. (b) In having a driveway in the sidewalk with such a sharp curve as to make an unsafe and dangerous walkway for pedestrians within the sidewalk limits. (c) In allowing said driveway to be constructed of improper materials, so that the curved surface of said driveway within the sidewalk limits became and remained so slippery as to be dangerous for pedestrians. (d) In maintaining the said driveway in the sidewalk after knowledge or reasonable opportunity and the lapse of reasonable time from acquiring knowledge of the defective and dangerous condition of the sidewalk.' The defendant demurred to the petition, upon the grounds: (a) 'No cause of action is therein set out. (b) It does not appear that there was any negligence in the construction of the sidewalk, under the allegations of said petition. (c) The

construction therein alleged is not negligent nor are the grounds of negligence therein alleged legal.' The court sustained the general demurrer, and the plaintiff excepted: Held: that the petition did not set forth a cause of action, and it was not error to sustain the demurrer." See also *Lundy* v. *Augusta*, 51 *Ga. App.* 655 (181 S. E. 237).

In *Harrison Company* v. *Atlanta*, 26 *Ga. App.* 727 (107 S. E. 83), this court said: "The basic principle running through the decisions cited above is that the adoption by the municipal authorities of a general plan of drainage and the determining of where and what size sewers will be built are discretionary acts, and defects therein are referable to mere errors of judgment, and for these the city is not liable. Construing the petition in connection with the notice given to the city, in which the only negligence alleged was that the 'sewer-eye was entirely too small,' and applying the above principles to the pleadings in this case, it is clear that the court did not err in sustaining the demurrer and dismissing the petition."

From these authorities it clearly follows that in the planning and the construction of the safety zone in question, the City of Atlanta was engaged in a governmental function and can not be held liable for any error in judgment in such planning. There is no allegation that the construction was faulty in any way as to material and workmanship, or that it was constructed otherwise than by a definite, well-considered plan. It follows, therefore, that in the planning and construction of the safety zone the City of Atlanta was engaged in a governmental function. In the exercise of such function the city is not liable for error of judgment, if any be shown.

■ The plaintiff in error contends, however, that conceding that in the planning and construction of the safety zone the City of Atlanta was engaged in a governmental function for which it can not be held liable, that such discretionary powers do not apply to the maintenance of the safety zone after it was planned and constructed; and that at the time the plaintiff received his injury the city was not engaged in a governmental function but was engaged in maintaining an inherently inefficient safety zone. Able counsel cites a number of decisions from our appellate courts and some from foreign jurisdictions to sustain his position. It is true that

in *McFarland* v. *McCaysville*, 39 *Ga. App.* 739 (148 S. E. 421), this court said: "In a suit for damages against a city, in which a recovery depended upon the establishment of negligence on the part of the city as respects the safety of one of its sidewalks, proof that on a paved walk about five feet wide and at a point five inches from the street the city maintained a fire-plug four inches in diameter and only six inches in height, and that the same was unprotected by any guard or barrier so as to prevent foot-passengers from coming in contact therewith, authorized the inference that, as to a pedestrian who in walking upon such sidewalk was injured by stumbling over such obstruction and falling, the city was negligent in failing to keep the sidewalk in a reasonably safe condition for travel. *City of Brunswick* v. *Glogauer,* 158 *Ga.* 792 (124 S. E. 787). Even if it could be said that in determining to locate, and in locating, the fire-plug at the particular place the city was in the exercise of a governmental function, the same would not be true of its failure to place some warning or barrier about the same to protect those who passed along the sidewalk. Moreover, the municipality was not in the *actual performance* of a governmental function at the time the plaintiff's injury occurred. *Mayor &c. of Savannah* v. *Waters,* 33 *Ga. App.* 234 (125 S. E. 772); *City of Rome* v. *Stewart,* 116 *Ga.* 738 (42 S. E. 1011); *City of Thomasville* v. *Campbell,* 38 *Ga. App.* 249 (143 S. E. 922)."

Counsel for the plaintiff also cite City of Norfolk *v.* Hall, 175 Va. 545 (9 S. E. 2d, 356), and quote therefrom as follows: "The courts have enunciated the general rule that a municipal corporation is not liable for injuries resulting from its adoption of a defective plan for a street or highway when the defects in such plan are due to mere error of judgment, but give that rule no application to the defective or negligent construction of its streets under an adopted plan *or to their negligent maintenance.*" (Italics ours.)

Counsel cite Kiernan *v.* New York, 14 App. Div. 156 (43 N. Y. Supp. 538). The facts in that case are that the city had caused its avenue to be graded by building an embankment about twelve feet above the adjoining lot. A 12-year-old girl, in passing along the flag walk, fell over the embankment and was injured. There was no guard or barrier along the walkway. In dealing with the question the court said: "It can not be held as a general proposition that a city may excuse itself from a charge of negligence as to the

condition and care of its streets merely by claiming that it had acted judicially in determining to leave the street in a dangerous condition for public travel. The cases in which any such a rule can be applied at all must necessarily be quite limited and this clearly is not such a case."

Counsel for the plaintiff also cite *City of Rome* v. *Brinkley*, 54 *Ga. App.* 392, and *City of Atlanta* v. *Wilson*, 59 *Ga.* 544, to the effect that the allegations of the plaintiff's petition in the instant case presented a question of fact for the jury to determine. It will be observed that the facts in those cases distinguish them from the allegations of the petition in the instant case. It would seem from practically all the authorities that the duty and responsibility of constructing safety zones presents quite a different situation from the facts as they appear in the cases cited. It nowhere appears in the plaintiff's petition in the instant case as to what standard of safety zones the city should plan and construct. It must be kept in mind that a safety zone must be constructed so as to permit the public desiring to board and alight from streetcars to mount the same with reasonable safety and at the same time provide for streetcars on one side and other vehicular travel on both sides. If a safety zone should be designed with a guard rail on the streetcar side, as the plaintiff alleges, then why not a safety rail on the other side as well? Then the question would arise as to how large the entrance should be and where, to prevent congestion of the streets and to allow reasonable accessibility for the users of the zone. As to the curvature and metal material on the streetcar side of the safety zone, it can not be said that it was not thus constructed, and properly so, in order to make the streetcar flush with the side of the safety zone and more accessible to the users·of the zone in alighting from and boarding streetcars. There is no allegations in the petition to show that a more safe and efficient zone could have been designed or constructed at the point in question. We do not think that the mere allegations that the zone should have been constructed with a barrier or side rail on one side are sufficient to present a jury question under all the allegations of fact in this case. It is our opinion that the material allegations taken together are conclusions without sufficient facts alleged to present a jury question under the law.

It will be observed that the only case from our appellate courts which we have cited in the opinion that deals with the construction and maintenance of a safety zone is *Butler* v. *Atlanta,* supra. If there are others we have been unable to find them, and counsel for either side have cited us to none other. The principles announced in the other cases we have cited are all referred to by analogy only. Safety zones have passed the experimental stage, and are now recognized as a "safety device of well-known efficiency." The plaintiff alleges: "Simultaneously with the movement of the streetcar petitioner was suddenly jostled by the movement and shifting of the assembled persons on the platform moving forward thereon to board the front and sole entrance of the car, thereby causing petitioner to be and become unbalanced, to lose his foothold, causing his feet to slip from the elevated platform along and down the inclined, sloping, slippery, and angular east side." It is common knowledge that most sidewalks adjacent to streets in cities are elevated above the streets similar to the safety zone in question. It is as easily inferable that a pedestrian could be *"jostled by the movement and shifting"* of the crowds on the sidewalk and thrown into the traveled street and injured. In such a circumstance we do not think the municipality could be held liable because it did not anticipate such an occurrence on the part of third persons and protect against it by erecting guard rails or barriers along the sidewalks or change the design of the sidewalks.

The court did not err in sustaining the demurrers of the City of Atlanta to the plaintiff's petition.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*