## DILLEY et ux. v. CITY OF HOUSTON.
### No. 12053.

Court of Civil Appeals of Texas. Galveston.
Jan. 27, 1949.

Rehearing Denied Feb. 17, 1949.

Roy Walford and Harry H. Burns, both of Houston, for appellants.

Will Sears, City Atty. and Bennett Lay, Asst. City Atty., both of Houston, for appellee.

Walter E. Boyd, of Houston, amicus curiae.

MONTEITH, Chief Justice.

This action was brought by appellant Arthur S. Dilley and Theresa Dilley for recovery of damages from the City of Houston for the death of their son, John Arthur Dilley, which was alleged to have been caused by the negligence of appellee in the construction and maintenance of a storm sewer on Cetti and Hays streets in the City of Houston. They alleged that after a heavy rain their son, John Arthur Dilley, while riding his bicycle near the intersection of Cetti and Hays Streets, had struck an excavation left in the street by the employees of the City while constructing the sewer, and that he was thrown from his bicycle into the excavation and swept by the flood waters into a drainage pipe which was not protected by a grating, and drowned. They alleged numerous specific acts and omissions on the part of appellee and its employees, claimed to amount to negligence proximately causing the death of John Arthur Dilley.

Appellee answered by defensive pleas and by a special plea that, at the time the claimed damages were sustained, the City of Houston was engaged in a governmental function, to wit—the construction and maintenance of a sewer constructed to insure the proper drainage in the City of Houston, which was required in the interest of public health, and that it was not liable for injuries sustained by plaintiffs.

In answer to special issues submitted, a jury found, in substance, that the failure of the City of Houston, its agents and employees to place an iron grating in front of an opening to the sewer along Hays Street was negligence; that substantial and material use was not being made of the sewer in question for promoting sanitary conditions, and that John Arthur Dilley had not voluntarily entered the drainage waters in the proximity of the opening to the sewer on the occasion in question. The jury found that $6,000 would reasonably compensate appellants for the death of their son. The trial court granted appellee City of Houston's motion for judgment non obstante veredicto.

The controlling question presented in the appeal is whether the construction and maintenance of the storm sewer in question was a governmental or proprietary function of the City of Houston. If the construction and maintenance of the sewer in question was a governmental function, the appellants were not entitled to recover.

In the recent case of City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259, 261, the Supreme Court had before it for decision the liability of a City for alleged negligent acts of its employees and in that case announced the following rules:

"A municipal corporation functions in a dual capacity. At times it functions as a private corporation, and at other times it functions as an arm of the government. Therefore its liability or nonliability rests upon the following two rules:

"1. When a municipal corporation acts in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government, it is liable for the negligence of its representatives. (Citing authorities.)

"2. A municipal corporation is not liable for the negligence of its agents and employees in the performance of purely governmental matters solely for the public benefit. (Citing authorities.)"

The court held in the Quinones case that "The underlying test is whether the act performed by a city is public in its nature and performed as the agent of the State in the furtherance of general law for the interest of the public at large, or whether it is performed primarily for the benefit of those within the corporate limits of the municipality. * * *"

It is undisputed in the record that the storm sewer in question was constructed for and served to carry off surface water and other fluid substances, and waste matter, in the section of the City served by it, and that it prevented the accumulation of stagnant water and the residue of decayed substances, and the pollution of the air with unhealthful and obnoxious fumes. It is also undisputed in the record that the construction and maintenance of the sewer was a non-revenue project of the City of Houston.

The material facts and the questions presented in this case are similar in many respects to those in the case of City of Gladewater v. Evans, Tex.Civ.App., 116 S.W.2d 486, writ refused. In that case Evans sued the City of Gladewater and the Gladewater Water & Sewer Company for injuries alleged to have resulted from an explosion from a manhole in a sewerage system over which the City of Gladewater had erected a sheet-iron-toilet for the use of its employees. The sewer system was owned by the Gladewater Water & Sewer Company, a private Corporation. The City of Gladewater was engaged in the construction of a storm sewer system parallel to this sewer at the time of the alleged injuries. At the close of the testimony appellant moved for an instructed verdict grounded upon the proposition that the City was engaged in a governmental function, and was not liable for the alleged injuries. The Court of Civil Appeals in its opinion held that a storm sewer serves to carry off water, other fluid substances, and small waste matter, and thereby prevents accumulation of stagnant water or residue of decaying substances, and the pollution of the air with unhealthful fumes and vapors, and that in this, the construction of a storm sewer by a municipality is a project for the public health and sanitation. The Court in its opinion cited the case of City of Wichita Falls v. Robison, 121 Tex. 133, 46 S.W.2d 965, 966, in which the Supreme Court, in its opinion said: "It is well settled by the decisions of this court, as well as by those in other jurisdictions, that sanitation for the public health of a city is a governmental function, and that, when a city is exercising

such power, it is not liable for injuries inflicted through the negligence of its officers and employees. (Citing authorities.) * * * The ordinary meaning of the word 'sanitary' is that which pertains to public health with particular reference to cleanliness and freedom from infection and deleterious influences. * * *".

In the Gladewater case the court cited the case of Ballard v. City of Ft. Worth, Tex.Civ.App., 62 S.W.2d 594, 595, writ refused, in which the court had before it the question of liability of the city for injuries received by an employee while at work in one of the pipes of the city's sewer line, in which the court said: "The established facts in the present case are that the city constructed and maintains its sewer system for the purposes specified in the section of the charter quoted from its general revenue and without fees charged or profit. This being true is presented, we see no material distinction between the present case and that of [City of] Wichita Falls v. Robison, 121 Tex. 133, 46 S.W.2d 965, 966. * * *"

In the case of City of Dallas v. Smith, 130 Tex. 225, 107 S.W.2d 872, 876, which was cited with approval in the opinion in the case of Gladewater v. Evans, supra, the Court said: "It is well settled that a municipality is not responsible for the negligent acts of its employees who are endeavoring to carry out the regulations of the city to promote the public health and to care for the sick and destitute."

In the case of City of Fort Worth v. George, Tex.Civ.App., 108 S.W.2d 929, 931, writ of error refused, plaintiff was injured by employees of the City of Fort Worth while engaged in the collection of garbage. The City defended upon the ground that its agents and employees were performing a governmental function. The Court in its opinion said:

"We believe that, as disclosed by this record, the acts of the City of Fort Worth in collecting garbage and refuse matter from the homes of its inhabitants and the disposition of it when so collected are governmental functions imposed upon the municipality by law and are in furtherance of carrying into effect the Sanitary Code

as contained in the general laws of this State.

"The City of Fort Worth is organized and chartered under the Home Rule Amendment of the Constitution (Article 11, § 5 [Vernon's Ann.St.]) and has been given powers authorized by article 1175, Rev.Civ. Statutes. * * *

"More than one test has been urged by the different courts in determining whether or not a function performed by a municipality is governmental or corporate. In some instances the rule has been applied by determining if the objective to be attained is for the use and benefit of the general public. While upon the other hand the test has been whether or not the duties are those imposed upon the city by law or whether they are voluntarily assumed by the city. We think the latter test most applicable here. If an act be one which in fact does inure to the benefit of the general public, we cannot exclude the special benefits that come to those residing within the corporate limits, for the reason they are as much a component part of the general public as are those on the outside. As stated, we believe the better rule to be applied in arriving at what are governmental functions is the one expressed in the early opinion by Judge Stayton, speaking for the Supreme Court in the case of City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am.Rep. 517, where it was said: 'In so far as a quasi corporation exercises powers exclusively public in their character, forced upon it without its consent, simply because the state can thus, through such local agencies, more easily and effectively discharge duties essentially its own, it is but proper that no action should be maintained against it for the negligence, or even misfeasance, of its officers, unless the action be given by an expression of the same sovereign will which arbitrarily imposed the duty.' * * *

"The case of City of Wichita Falls v. Robison, 121 Tex. 133, 46 S.W.2d 965, 966, * * *. The defendant city contended, as does the defendant in this case, that it was in the performance of governmental functions and was not responsible for injuries inflicted upon plaintiff while working within the scope of his duties as such employee. Judge Pierson, speaking for the court, said: 'It is well settled by the decisions of this court, as well as by those in other jurisdictions, that sanitation for the public health of a city is a governmental function, and that, when a city is exercising such power, it is not liable for injuries inflicted through the negligence of its officers and employees. (Citing authorities.) * * * It affirmatively appearing from defendant in error's petition that he was engaged in the performance of a governmental function at the time of his injury, the city was not liable, and he cannot recover.' "

It is undisputed that the City of Houston is governed by the same statutes and by the same statutory code as the City of Fort Worth, and reasons advanced in the case of City of Fort Worth v. George, supra, in holding the furtherance of sanitary measures are governmental functions are applicable to the City of Houston.

The Charter of the City of Houston provides that: "The City of Houston may buy or construct, own, maintain and operate a system of waterworks, gas or electric lighting plants, street cars and sewers, and it shall be its duty to regulate, care for and dispose of sewage, waste water, surface water, offal, garbage and other refuse matter, and to make rules and regulations governing the same, and prescribe penalties for violations of said rules and regulations." (Art. II, Sec. 7, Charter of the City of Houston.)

This Section of the original Charter of the City of Houston, enacted by a Special Act of the 29th Legislature in 1905, has never been amended or repealed, and is still effective, and this fact and the holding of City of Fort Worth v. George, supra, establishes that the construction and maintenance of the storm sewer in question was a governmental function of the City of Houston.

The above decisions by the Courts of this State, we think, establish that the storm sewer in question was a governmental function of the City of Houston, and are controlling in this case.

Decisions from other jurisdictions dealing with this question, with few exceptions,

follow substantially the line of reasoning adopted by our Courts in holding that when storm sewers are used for sanitary purposes they are performing governmental functions.

In Georgia—in the case of Harrison Co. v. City of Atlanta, 26 Ga.App. 727, 107 S. E. 83, 84: plaintiff brought suit for damages sustained by him because of the overflow of a storm sewer. The Court, in affirming the judgment of the trial court and denying recovery, said: "If the sewer eye was too small, this was not the result of 'negligent construction,' but was an error in the plan involving the exercise of judgment and discretion, for which the municipality would not be liable."

In the case of Johnston v. City of Atlanta, 71 Ga.App. 552, 31 S.E.2d 417, 418, it was held that the trial court had properly sustained a general demurrer to plaintiff's petition which complained of damage from the overflow of a storm sewer. It was held that: "It is now settled in this state that, where the legislature delegates governmental authority to a municipal corporation, the municipality is not liable to private individuals for any error in performing legislative or judicial powers."

In Minnesota—in the case of Roche et al. v. City of Minneapolis, 223 Minn. 359, 27 N.W.2d 295, 298, 173 A.L.R. 1020, plaintiffs sought damages from a sewer's overflow. The Supreme Court, in affirming the judgment of the trial court that plaintiff take nothing, said in its opinion: "The duty rests upon a municipality to employ competent engineers to plan and construct its system of streets and sewers, and ordinarily, if it thus acts, it is not liable because of errors of judgment therein. (Citing authorities.) In the instant case, no one questions the competency of the engineers who planned and constructed the municipal improvements, the efficiency of which is here questioned."

In the instant case there is no evidence questioning the competency of the City Engineer, Mr. R. W. Lee, who drew the plans for the sewer in question. The record indicates that he was highly qualified by education, training and experience to perform his engineering duties.

The positive and uncontradicted evidence on the trial of the case reflected the fact that the storm sewer in question served in the furtherance of sanitation and the promotion of public health, and while the jury found, in answer to special issue No. 3, that substantial use was not being made of the sewer for promoting the sanitary conditions in the neighborhood served thereby, the evidence in the record reflects that the sewer in question drained surface water from the area served by it, and that this drainage of surface water served to promote and further sanitation in the community.

We have considered all other points of appeal presented by appellants in their brief, and finding no errors in the record, the judgment of the trial court will be in all things affirmed.